1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMAR JORDAN,<br><br>            Plaintiff,<br><br>      v.<br><br>E. ANUNCIACION, et al.,<br><br>            Defendants. | Case No. 1:20-cv-00467-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(ECF No. 52)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I.      INTRODUCTION

Lamar Jordan ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action.  This case is proceeding on Plaintiff's claims against defendants Napoles and Anunciacion (both of whom are dentists) for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment based on allegations that defendant Napoles failed to provide Plaintiff with dental care for pain and swelling, and that defendant Anunciacion refused to clean his mouth wound.  (ECF Nos. 1, 12, & 41).[1]

On October 28, 2021, Defendants filed a motion for summary judgment on both claims.  (ECF No. 52).  On April 1, 2022, Plaintiff filed his opposition.  (ECF No. 58).  On May 6, 2022, Defendants filed their reply.  (ECF No. 62).

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

Based on the evidence submitted by the parties, the Court finds that there is a genuine dispute of material fact regarding whether Defendants knowingly disregarded Plaintiff's serious medical needs. Accordingly, the Court recommends that Defendants' motion for summary judgment be denied.

## II.      SUMMARY OF CLAIMS

This case is proceeding on Plaintiff's claims against defendants Napoles and Anunciacion for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment based on allegations that defendant Napoles failed to provide Plaintiff with dental care for pain and swelling, and that defendant Anunciacion refused to clean his mouth wound. (ECF Nos. 1, 12, & 41).

In allowing Plaintiff's claim against defendant Napoles to proceed past screening, the Court found as follows in its screening order:

> As to defendant Napoles, Plaintiff alleges that he saw defendant Napoles on March 15, 2018, and complained of pain and swelling. Defendant Napoles told Plaintiff that everything looked ok and that the swelling would go down. Approximately a month and a half later, the pain and swelling remained, so Plaintiff again went to see defendant Napoles. Plaintiff told him about the pain and swelling, and that he had developed a nasty bitter taste in his mouth. Defendant Napoles did not even attempt to discover what was wrong. Eventually, the infection became an abscess, and surgery was required to remove it. Based on the allegations in the complaint, the Court finds that Plaintiff has sufficiently alleged an Eighth Amendment claim against defendant Napoles.

(ECF No. 11, pgs. 5-6; ECF No. 12, p. 2).

In allowing Plaintiff's claim against defendant Anunciacion to proceed past screening, the Court found as follows:

> As to defendant Anunciacion, Plaintiff alleges that she refused to clean his wound, even though Plaintiff told her that he had food stuck in the wound, and that it was causing him pain. After defendant Anunciacion's failure to clean the wound, the oral surgeon ordered that the wound be cleaned on a daily basis for thirty days. Liberally construing the allegations in the complaint, the Court finds that Plaintiff has sufficiently alleged an Eighth Amendment claim against defendant Anunciacion.

(ECF No. 11, p. 6; ECF No. 12, p. 2).

1    All other claims were dismissed.  (ECF No. 12, p. 2; ECF No. 41, p. 2).

2    **III.    SUMMARY JUDGMENT**

3        a.   Defendants' Motion (ECF No. 52)

4    Defendants filed a motion for summary judgment on October 28, 2021.  (ECF No. 52).

5    Defendants move for summary judgment on both claims on the ground that both defendants

6    provided Plaintiff with appropriate treatment.  (Id. at 5).

7            i.  *Defendant Napoles*

8    As to defendant Napoles, Defendants assert that on March 13, 2018, Plaintiff had two

9    teeth (#16 and #17, which were wisdom teeth) extracted by Dr. Norris, who is no longer a

10   defendant in this action.  (Id.).  Plaintiff signed a consent form acknowledging that healing

11   varies by patient and that he "could experience infection, pain, swelling and discomfort for

12   several days, and the risk of temporary or permanent nerve damage.  Jordan was prescribed

13   antibiotic medication (amoxicillin), and Tylenol #2 and ibuprofen, to address any pain and

14   swelling, and prevent infection."  (Id.).

15   Plaintiff subsequently saw defendant Napoles three times.  (Id. at 5-6).  At the first visit,

16   which occurred on March 15, 2018, Plaintiff complained of bleeding and swelling.  (Id. at 5).

17   Defendant Napoles examined the surgical site and determined that the healing was within

18   normal limits, that there was no bleeding, and that the sutures were intact.  (Id.).

19   At the second visit, which occurred on March 19, 2018, Plaintiff reported swelling and

20   numbness.  (Id.).  Defendant Napoles noted that Plaintiff's swelling had diminished sufficiently

21   since the last visit.  Defendant Napoles also "informed Jordan that the lingering numbness

22   could be temporary or permanent based on the nerve trauma, which is a known post-operative

23   complication of wisdom tooth removal."  (Id.).

24   At the third visit, which occurred on May 1, 2018, Plaintiff "presented with slight

25   swelling and slight induration on the left side of his face."  (Id. at 5-6).  Defendant Napoles

26   noted that there might be a dentigerous cyst associated with Tooth #17, and prescribed

27   "antibiotic Clindamycin for the swelling, and a combination of Tylenol #3 and Ibuprofen 400

28   mg to address Jordan's pain."  (Id. at 6).  Defendant Napoles also ordered an x-ray, but he "was

3

not able to evaluate Jordan along with the panoramic X-ray results as [Plaintiff] was transferred to Ironwood State Prison on May 16, 2018." (Id.).

Defendants admit that there is a question of fact regarding whether Plaintiff had a serious medical need. (Id. at 9). However, based on the above facts, Defendants argue that Plaintiff received adequate care and cannot show that defendant Napoles knowingly disregarded a substantial risk of harm. (Id.).

Defendant Napoles examined Plaintiff, and he was of the opinion that Plaintiff was healing and that Dr. Norris provided appropriate medication. (Id. at 10). On May 1, 2018, defendant Napoles again examined Plaintiff, and when he noticed the possibility of a dentigerous cyst, he prescribed medication and ordered an x-ray. (Id. at 10-11). Thus, the evidence shows "Dr. Napoles's attempt to address Jordan's symptoms based upon dental examinations." (Id. at 11).

ii. *Defendant Anunciacion*

As to defendant Anunciacion, Defendants assert that "[o]n June 4, 2018, with Jordan's consent, Ironwood oral surgeon Dr. Steven Paul extracted tooth #18 and treated the post-surgical extraction site for tooth #17, which presented as an open socket with purulence (pus). As to #17, Dr. Paul performed debridement and removal of several large sequestrums, which is necrotic bone detached from healthy tissue. Dr. Paul prescribed pain medication and antibiotics to prevent infection." (Id. at 6). During the next month, Plaintiff had three follow-up visits with non-defendants. During the first follow-up, the dentist noted normal healing, the sutures were removed, and the sockets were irrigated with saline. (Id.). During the second follow-up, the dentist "noted that there was no more infection, but placed additional sutures because the fissure was still open." (Id.). During the third follow-up, the dentist noted that the sutures were still in place, that both surgical cites were healing, and that there was mild swelling near the Tooth #18 site. (Id.).

On July 13, 2018, Plaintiff saw defendant Anunciacion for a follow-up. (Id.). "The wound opening was closing and there was no sign of infection. There was slight superficial food debris on the healed socket that the patient could remove with normal rinsing. Based on

her observation and examination, Dr. Anunciacion determined that no food could enter the wound.  If food could have entered the wound, then she would have irrigated the area.  Jordan had no complaint of pain or swelling and there were no signs of acute infection or abnormal healing.  Dr. Anunciacion noted that the extraction site #18, 17 and panoramic x-rays had to be evaluated and consulted by the oral surgeon for possible additional treatment." (Id.). Accordingly, defendant Anunciacion called the supervising dentist and the health program specialist in order to refer Plaintiff back to the oral surgeon.  (Id. at 6-7).  This "allowed Jordan to see the surgeon within a few days whereas it normally takes three to four weeks for a patient to be seen by a specialist." (Id. at 7).

On July 16, 2018, Plaintiff was seen by the oral surgeon.  The oral surgeon "reviewed the X-rays and noted that there was no exposed bone and that the healing area of tooth #17 and #18 had complete mucosal covering.  The mucosa is the lining in the oral cavity that protects it from external harmful agents.  There was no pain on the surgical side, no swelling or purulence, and no sign of infection." (Id.).  However, the surgeon "noted that the depression of tooth area #17 and #18 made it difficult to keep the area hygienic." (Id.).  Accordingly, the surgeon "recommended daily irrigation of the area by the general dentist for one month for hygiene purposes." (Id.).

Plaintiff was subsequently seen on numerous occasions by different dentists.  (Id.). Plaintiff saw defendant Anunciacion four more times, and each time she followed the surgeon's recommendation and irrigated Plaintiff's tooth depression.  (Id.).

Defendants admit that there is a question of fact regarding whether Plaintiff had a serious medical need.  (Id. at 9).  However, based on above facts, Defendants argue that Plaintiff received adequate care and cannot show that defendant Anunciacion knowingly disregarded a substantial risk of harm.  (Id.).

Defendant Anunciacion did not irrigate the wound on July 13, 2018, because she determined that no food could enter the wound and "because the standard of care is to irrigate the surgical wound for one to two weeks to avoid infection." (Id. at 11).  Additionally, Plaintiff "had no signs of acute infection or abnormal healing."  Moreover, she referred

Plaintiff to the oral surgeon on an expedited basis for possible additional treatment.  (Id. at 11-12).

While the surgeon ordered irrigation, he did so for hygiene purposes.  (Id. at 12).  "Dr. Anunciacion's decision not to irrigate Mr. Jordan's depression at the July 13, 2018 appointment did not harm him or cause his condition to worsen."  (Id.).  Additionally, even if defendant Anunciacion's decision not to irrigate was incorrect, this mistake at most amounts to negligence and thus does not support a claim for deliberate indifference.  (Id. at 12).

In support of their motion, Defendants submit among other things: the declaration of defendant Anunciacion; the declaration of defendant Napoles; and medical records related to Plaintiff's dental care.

b.  Plaintiff's Opposition (ECF No. 58)

Plaintiff filed his opposition on April 1, 2022.  (ECF No. 58).[2]

Plaintiff argues that Defendants' position is contrary to the evidence, and that Defendants' declarations are not evidence at all.  (Id. at 2).  On the other hand, Plaintiff's evidence shows that Defendants acted with deliberate indifference towards his health.  (Id.).

i.  *Defendant Napoles*

Plaintiff asserts that on March 15, 2018, approximately two days after his wisdom tooth was extracted, he was awakened by excruciating pain in the left side of his face, and he was covered in blood.  (Id. at 4).  The blood was all over his pillow, face, and head.  (Id.).  Additionally, "[t]he entire left side of plaintiff's face was extremely and freakishly swollen."  (Id.).  Plaintiff sought urgent medical attention and was seen by defendant Napoles on that same day.  (Id.).  However, defendant Napoles simply looked at Plaintiff's surgical site, stated that the sutures were intact, and concluded the appointment.  (Id.).  This was so even though

_____

[2] In his fact section, Plaintiff lists the conduct of each defendant separately.  However, in the remainder of his opposition, at times Plaintiff refers to "Defendants" instead of specifying which defendant he is referring to.  (See, e.g., ECF No. 58, p. 21) ("However, all involved defendants in the instant action with deliberate indifference and calloused disregard toward plaintiff['s] health conditions, pain[,] and suffering, deprived him of pain reliever and adequate post-op treatment and care for months…").  Given that Plaintiff includes separate factual allegations against each defendant, that the defendants worked at different prisons during the relevant period, that the Court allowed each claim based on different incidents, and that there are no factual allegations suggesting that the defendants are in any way responsible for each other's conduct, the Court will analyze each claim separately.

6

Plaintiff informed defendant Napoles that he could feel something inside the surgical site, and Plaintiff believed that this something was causing bleeding and excruciating pain.  (Id.).  Plaintiff also requested an x-ray of the site, but defendant Napoles said no.  (Id.).  Plaintiff also asked defendant Napoles to refer him to an oral surgeon, but defendant Napoles denied that request as well.  (Id.).

On March 19, 2018, Plaintiff saw defendant Napoles again.  (Id. at 5).  Plaintiff once again informed defendant Napoles that he was in a lot of pain, and Plaintiff's face remained unchanged in regard to the extreme swelling.  (Id.).  The swelling prevented Plaintiff from sleeping and interfered with his eating.  (Id.).  Defendant Napoles told Plaintiff that the complications he was experiencing were normal.  (Id.).  Plaintiff informed defendant Napoles that the extreme swelling was clearly abnormal as it produced severe complications, including excruciating and unusual pain.  (Id.).  Plaintiff added that it looked more like a reaction to something.  (Id.).  Plaintiff also once again told defendant Napoles that it felt like something was inside the surgical site and once again asked for a referral to see the oral surgeon.  (Id.).  Defendant Napoles denied Plaintiff's request again.

From March 19, 2018, through April 16, 2018, Plaintiff's condition remained unchanged.  (Id.).  Additionally, Plaintiff's ability to eat worsened every day.  (Id.).

On April 16, 2018, Plaintiff submitted a Form 22 Request for interview to Dr. Norris.  (Id. at 6).  Plaintiff informed Dr. Norris that he had his wisdom tooth removed, that he was in constant pain, that his face has been swollen for over thirty days, and that defendant Napoles was not taking Plaintiff's complaints seriously.  (Id.).

On May 1, 2018, Plaintiff saw defendant Napoles for the third time, and reminded defendant Napoles that he previously told Plaintiff his pain and facial swelling were normal complications and would go away within a couple of weeks.  (Id.).  Plaintiff also told defendant Napoles that his condition was unchanged for over forty-two days, and in fact was getting worse.  (Id.). Defendant Napoles informed Plaintiff that he may have a dentigerous cyst.  (Id.).  Defendant Napoles also denied Plaintiff's request for a referral to the oral surgeon, but he did prescribe antibiotics for the cyst.  (Id.).  Plaintiff also asked defendant Napoles to place a

7

medical hold because he was going to be transferred, and at the very least wanted to stay in the same institution until the antibiotics helped or took effect on Plaintiff.  (Id.).  Defendant Napoles refused to place the hold, in violation of CDCR policy and procedures, and on May 15, 2018, Plaintiff was transferred to Ironwood State Prison.  (Id.).

On May 24, 2018, Plaintiff saw Dr. Weisberg, who told Plaintiff that the surgical site was infected.  (Id.).  She also informed Plaintiff that "the infection was of a more than just an infection that developes from inproper post-surgical care," and "that Kern Valley health care officials were to prevent any further potential damage by exercising their due diligence and placed plaintiff/patient on medical hold until care is no longer needed e.g., seeing the obvious through."  (Id. at 8) (errors in original).  She also informed Plaintiff that defendant Napoles should have known that Plaintiff had an infection, and asked Plaintiff if he could taste it ("[r]eferring to the heavy purulence and thick strings of rotted mucuous [sic]").  (Id. at 25).  Finally, she informed Plaintiff that he would remain on the antibiotics that were previously prescribed.  (Id. at 8).

However, the antibiotics did not work, and Plaintiff had to undergo surgery to have an infected abscess removed.  (Id.).  The infection was so bad that the surgeon had to remove more than half of Plaintiff's jawbone.  (Id. at 9).

Based on these facts, Plaintiff argues that there is a genuine dispute of material fact that precludes entry of summary judgment.  (Id. at 13).  Plaintiff also argues that Defendants have failed to meet their burden to demonstrate there are no genuine disputes of material fact.  (Id. at 19).  As the evidence shows, Plaintiff's requests for proper and routine postoperative care were denied and his complaints of pain were ignored.  (Id. at 16).  Due to this, Plaintiff was denied care, including pain relievers, and he suffered for months.  (Id. at 17 & 21).  A reasonable person would not have caused such pain, suffering, or injuries.  (Id. at 18).

Defendant Napoles's "fallacious reliance on his professional judgement and intentional action or decision to deny, delay, and or intentionally interfere with plaintiff's pain medication and post-op treatment knowing that he was doing wrong in placing plaintiff's present and future health at a high risk, and disregarding that obvious risk to plaintiff's serious medical

needs constitute deliberate indifference to plaintiff's health and safety." (Id. at 22) (errors in original).

Plaintiff alleges that, in his declaration, defendant Napoles acknowledges that he knew about Plaintiff's postoperative infection, yet he disregarded that knowledge. (Id. at 24). Plaintiff also alleges that defendant Napoles's declaration is "wholly inadequate and bogus." (Id.). Plaintiff also alleges that defendant Napoles falsified medical records by understating the amount of swelling. (Id. at 25).

Plaintiff argues that the fact that Defendants deny that Plaintiff complained of pain and discomfort throughout the ordeal is further proof that they were deliberately indifferent to his pain and suffering. (Id. at 27).

Plaintiff also alleges that defendant Napoles did not schedule any follow-up appointments as urgent emergencies (immediately) or as urgent (within twenty-four hours). (Id. at 28-29). Instead, he only casually scheduled appointments, which prolonged Plaintiff's pain and suffering. (Id. at 29).

### ii.   *Defendant Anunciacion*

On June 4, 2018, Plaintiff underwent oral surgery to remove an abscess that was infected. (Id. at 8). The surgeon had to slice infected gum tissue, remove Tooth #18, and scrape at the jawbone in order to remove the abscess. (Id. at 9).

On July 13, 2018, Plaintiff was in severe pain. (Id.). He sought care and was seen by defendant Anunciacion. (Id.). Plaintiff told her that he had food compacted inside the surgical site since the night before, and that he could not get the food out by rinsing. (Id.). Plaintiff also told her that, according to the oral surgeon, if food got into the surgical site, which was open and highly susceptible to food getting in, Plaintiff was to report the issue to the facility dentist so he or she could clean the site by irrigating the area. (Id.).

Defendant Anunciacion examined the area and stated that she could see that the open wound was in fact compacted with food. (Id.). However, she did not irrigate the area and refused to clean the wound, stating that she did not want to be blamed for anything. (Id.). Instead, she stated that she would refer Plaintiff back to the oral surgeon so he could clean it

out.  (Id.).  Plaintiff begged her to irrigate the wound immediately because it was incredibly painful, but she did not.  (Id.).

On July 16, 2018, Plaintiff saw the oral surgeon.  (Id. at 10).  The surgeon cleaned the wound and told Plaintiff he would issue an order for the wound to be irrigated over the next 30 days.  (Id.).

Based on these facts, Plaintiff argues that there is a genuine dispute of material fact that precludes entry of summary judgment.  (Id. at 13).  Plaintiff also argues that Defendants have failed to meet their burden to demonstrate there are no genuine disputes of material fact.  (Id. at 19).

Through Plaintiff's health records, and more directly through Plaintiff's plea for medical care, defendant Anunciacion learned about Plaintiff's need for adequate pain medication and irrigation treatment.  (Id. at 23).  However, she willfully disregarded it, which prolonged Plaintiff's pain and suffering.  (Id. at 22).  Plaintiff alleges that, due to the nature of the surgical site and the obvious need for treatment, including pain relief, the oral surgeon could not believe such callousness could even occur.  (Id. at 29).

Plaintiff also alleges that defendant Anunciacion lied in the medical record dated July 13, 2018, where she stated that Plaintiff did not complain of pain and did not complain of food debris packing the surgical site.  (Id. at 23).

Additionally, Plaintiff alleges that defendant Anunciacion did not schedule the follow-up appointment as an urgent emergency (immediately) or as urgent (within twenty-four hours).  (Id. at 28-29).  Instead, she casually scheduled the appointment, which prolonged Plaintiff's pain and suffering.  (Id. at 29).

In support of his opposition, Plaintiff submits among other things: his declaration; the declaration of Raul Ramirez; the declaration of Nathaniel Dawson; the declaration of Nigi Williams; medical records related to Plaintiff's dental care; and grievances and responses to the grievances.

      c.  Defendants' Reply (ECF No. 62)

Defendants filed their reply on May 6, 2022.  (ECF No. 62).  In their reply, among other

10

1   things, Defendants object to evidence submitted by Plaintiff.  (Id. at 5-8).  They also argue that

2   Plaintiff "offers no admissible evidence that Dr. Napoles's actions or alleged inaction caused

3   his harm."  (Id. at 10).  They also argue that "Dr. Anunciacion's decision not to irrigate

4   Jordan's depression at the July 13, 2018 appointment did not harm him or cause his condition

5   to worsen."  (Id. at 12).[3]

6          d.   Discussion

7              i.   *Legal Standards for Summary Judgment*

8          Summary judgment in favor of a party is appropriate when there "is no genuine dispute

9   as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

10  P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there

11  is a genuine dispute about material facts, summary judgment will not be granted.").  A party

12  asserting that a fact cannot be disputed must support the assertion by "citing to particular parts

13  of materials in the record, including depositions, documents, electronically stored information,

14  affidavits or declarations, stipulations (including those made for purposes of the motion only),

15  admissions, interrogatory answers, or other materials, or showing that the materials cited do not

16  establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

17  admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

18         A party moving for summary judgment "bears the initial responsibility of informing the

19  district court of the basis for its motion, and identifying those portions of 'the pleadings,

20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

21  any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex

22  Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  If the moving party

23  moves for summary judgment on the basis that a material fact lacks any proof, the Court must

24  determine whether a fair-minded jury could reasonably find for the non-moving party.

25  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla

26

27         _____

28         [3] The Court notes that, to the extent Defendants' reply raises new arguments, the Court need not address
    those arguments.  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider
    arguments raised for the first time in a reply brief.").

1   of evidence in support of the plaintiff's position will be insufficient; there must be evidence on

2   which the jury could reasonably find for the plaintiff.").  "[A] complete failure of proof

3   concerning an essential element of the nonmoving party's case necessarily renders all other

4   facts immaterial."  <u>Celotex</u>, 477 U.S. at 322.  Additionally, "[a] summary judgment motion

5   cannot be defeated by relying solely on conclusory allegations unsupported by factual data."

6   <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

7            In reviewing the evidence at the summary judgment stage, the Court "must draw all

8   reasonable inferences in the light most favorable to the nonmoving party."  <u>Comite de</u>

9   <u>Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011).  It

10  need only draw inferences, however, where there is "evidence in the record … from which a

11  reasonable inference … may be drawn…"; the court need not entertain inferences that are

12  unsupported by fact.  <u>Celotex</u>, 477 U.S. at 330 n. 2 (citation omitted).  Additionally, "[t]he

13  evidence of the non-movant is to be believed…."  <u>Anderson</u>, 477 U.S. at 255.

14                    ii.   *Legal Standards for Eighth Amendment Claims for Deliberate*

15                          *Indifference to Serious Medical Needs*

16          "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an

17  inmate must show 'deliberate indifference to serious medical needs.'"  <u>Jett v. Penner</u>, 439 F.3d

18  1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  This requires

19  Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a

20  prisoner's condition could result in further significant injury or the unnecessary and wanton

21  infliction of pain,'" and (2) that "the defendant's response to the need was deliberately

22  indifferent."  <u>Id.</u> (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992))

23  (citation and internal quotations marks omitted), <u>overruled on other grounds by</u> <u>WMX</u>

24  <u>Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

25          Deliberate indifference is established only where the defendant *subjectively* "knows of

26  and disregards an *excessive risk* to inmate health and safety."  <u>Toguchi v. Chung</u>, 391 F.3d

27  1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

28  Deliberate indifference can be established "by showing (a) a purposeful act or failure to

respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.  To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

### iii.  *Objections to Evidence*

To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible.  Generally, it is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment.

However, the Court will address Defendants' hearsay objections to the extent that they argue that Defendants' statements, as alleged by Plaintiff, are inadmissible hearsay.  (See, e.g., ECF No. 62, pgs. 5-6).  As an example, Plaintiff alleges that defendant Anunciacion examined his mouth and stated that she could see that food was compacted in the open wound.  Plaintiff's Declaration, ECF No. 58, p. 45, ¶ 37.  This alleged statement, and other statements that Plaintiff alleges that Defendants made to him, are not hearsay.  Pursuant to Federal Rule of Evidence 801(d)(2)(A), a statement is not hearsay if "[t]he statement is offered against an opposing party and … was made by the party in an individual or representative capacity."  See also United States v. Warren, 25 F.3d 890, 895 (9th Cir. 1994) ("A defendant's own out-of-

court admissions ... surmount all objections based on the hearsay rule ... and [are] admissible for whatever inferences the trial judge [can] reasonably draw.") (alterations in original) (citation and internal quotation marks omitted); Brown v. Wimberly, 2016 WL 7324704, at *6 (E.D. Cal. Dec. 15, 2016) ("Importantly, an opposing party's statement offered against that party is not considered hearsay.").  Here, Plaintiff provides statements allegedly made by the opposing parties in his declaration, the statements are being offered against the respective opposing party, and the statements were made in the opposing parties' individual or representative capacity.  Accordingly, the statements are not hearsay.

Defendants also argue that "[t]he Court is not required to accept Plaintiff's self-serving statements where they are contradicted by the medical records."  (Id. at 6).  In support of this statement, they cite to Scott v. Harris, 550 U.S. 372, 380 (2007).  However, in Scott, there was a videotape that contradicted the plaintiff's version of events, and there was no indication that the videotape was doctored or altered.  Id. at 378.  Here, there is no evidence that is capable of objectively disproving Plaintiff's allegations regarding what occurred at the dental appointments.  See, e.g., Hughes v. Rodriguez, 31 F.4th 1211, 1218 (9th Cir. 2022) ("While Scott involved dashcam video footage, courts have since applied its logic to other types of evidence capable of objectively disproving witness testimony.").  Defendants have not cited to any controlling authority, and the Court is not aware of any, suggesting that medical records[4] are capable of objectively disproving a plaintiff's version of events that challenges the accuracy of those records.  Accordingly, this argument is not persuasive.

iv.  *Analysis*

To begin, the Court notes that "Defendants concede a question of fact exists as to whether Mr. Jordan's post-operative symptoms following his tooth extractions constituted a 'serious medical need.'  However, Mr. Jordan received adequate post-operative care, and will not be able to establish a triable issue of fact as to whether Defendants knowingly disregarded a

---

[4] The Court notes that at least some of the records that Defendants argue objectively disprove Plaintiff's version of events appear to have been created by Defendants.  (See, e.g., ECF No. 52-5 pgs. 93, 95, 148, & 149).

substantial risk of serious harm." (ECF No. 52, p. 9). Thus, the only issue before the Court is whether Defendants knowingly disregarded Plaintiff's serious medical needs. As the Court finds that there are genuine disputes of material fact regarding whether Defendants knowingly disregarded Plaintiff's serious medical needs, the Court will recommend that Defendants' motion for summary judgment be denied.

### 1.  Plaintiff's Claim Against Defendant Napoles

As to Plaintiff's claim against defendant Napoles, it is undisputed that on March 13, 2018, Plaintiff had at least one wisdom tooth removed and was prescribed medication after the procedure. It is also undisputed that Plaintiff saw defendant Napoles three times after the surgery, and that after the third visit, defendant Napoles ordered medication and an x-ray. However, what occurred at these appointments is disputed.

Plaintiff saw defendant Napoles on March 19, 2018. According to defendant Napoles, at this visit, defendant Napoles "noted that Jordan's swelling diminished sufficiently since the March 15 visit." Declaration of Defendant Nalpoles, ECF No. 52-4, p. 3, ¶ 7. Defendant Napoles also noted that Plaintiff's healing was within normal limits. (ECF No. 52-5, p. 148). However, according to Plaintiff, Plaintiff informed defendant Napoles that he was still in a lot of pain. Declaration of Plaintiff, ECF No. 58, pgs. 40-41, ¶ 9. Moreover, he still suffered from extreme swelling, and the swelling had not improved at all. Id. Plaintiff informed defendant Napoles that the swelling interfered with his ability to eat and sleep. Id. Plaintiff insisted that something was not right and asked for a referral to an oral surgeon, but his request was denied. Id. at ¶¶ 12 & 13. There is no indication that any other treatment was provided at this appointment.

According to Plaintiff, from March 19, 2018, through April 16, 2018, his painful condition remained unchanged. Id. at ¶ 14.[5]

Based on these competing versions regarding what occurred at this visit and Plaintiff's

---

[5] Plaintiff alleges this in his declaration. However, he also alleges that his condition did not improve until later. As the exact date his condition improved is not relevant to the above analysis, the Court uses the dates Plaintiff specifically lists in his declaration.

condition at the time, the Court finds that there is a genuine dispute of material fact regarding whether defendant Napoles was deliberately indifferent to Plaintiff's serious medical needs. According to the evidence provided by Plaintiff, he informed defendant Napoles about the swelling and his pain.  Moreover, Plaintiff's face was still extremely swollen, and the swelling had not improved.  Additionally, there is evidence that defendant Napoles saw the swelling, and drawing all reasonable inferences in Plaintiff's favor, it would be obvious that Plaintiff's face remained extremely swollen and that the swelling had not decreased.[6]  Despite this, defendant Napoles did not provide any treatment or schedule a follow-up.  Instead, he noted that healing was within normal limits.  This left Plaintiff in pain and with a swollen face for approximately a month, and the swelling interfered with his ability to eat and sleep.  Moreover, approximately two and a half months after his second visit with defendant Napoles, Plaintiff required surgery that included having part of his jaw removed.  Accordingly, the Court finds that there is a genuine dispute of material fact regarding whether defendant Napoles knowingly disregarded Plaintiff's serious medical needs.

Put another way, defendant Napoles's motion for summary judgment relies on alleged facts that are subject to dispute, namely whether the swelling was decreasing.  As the Court cannot find that these are undisputed facts, summary judgment must be denied.

Defendants make several new arguments in their reply, including questioning whether the delay in treatment caused harm.  However, as Defendants did not raise these arguments in their motion for summary judgment, Plaintiff was not required to submit evidence regarding these issues.  Moreover, "[t]he district court need not consider arguments raised for the first time in a reply brief."  Zamani, 491 F.3d at 997 (9th Cir. 2007).

As the Court has found that there is a genuine dispute of material fact that precludes

---

[6] Circumstantial evidence, such as evidence of obviousness, can be used to show subjective knowledge. Farmer, 511 U.S. at 842-43 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, cf. Hall 118 (cautioning against 'confusing a mental state with the proof of its existence'), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  Cf. LaFave & Scott § 3.7, p. 335 ('[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of ').") (alterations in original).

1   entry of summary judgment, the Court will not address any other potential disputes of fact.

2   **2.  Plaintiff's Claim Against Defendant Anunciacion**

3   As to Plaintiff's claim against defendant Anunciacion, it is undisputed that Plaintiff saw

4   defendant Anunciacion on July 13, 2018.  According to Defendants' evidence, defendant

5   Anunciacion did not irrigate the wound on July 13, 2018, because she determined that there

6   was no food in the wound.  Declaration of Defendant Anunciacion, ECF No. 52-3, p. 3, ¶ 11.

7   There were food debris, but it was on the healed socket, and Plaintiff could remove the food

8   with normal rinsing.  Id.  "If food could have entered the wound, then I would have irrigated

9   the area."  Id.

10   However, according to Plaintiff, at the appointment Plaintiff told defendant

11   Anunciacion that there was food compacted inside the surgical site, and that he could not get

12   the food out.  Plaintiff's Declaration, ECF No. 58, p. 45, ¶ 35.  Plaintiff also told defendant

13   Anunciacion that the oral surgeon told him that if food got into the surgical site that he should

14   ask a dentist to clean the site.  Id. at ¶ 36.  Defendant Anunciacion examined the area and stated

15   that she could see that food was compacted in the open wound.  Id. at 37.  Plaintiff begged and

16   pleaded for defendant Anunciacion to irrigate the wound because it was incredibly painful.  Id.

17   at pgs. 45-46, ¶ 40.  However, she refused to provide care to Plaintiff, stating that she did not

18   want to be blamed for anything.  Id. at p. 45, ¶ 38.  While she did not provide care, it is

19   undisputed that she did refer Plaintiff to the oral surgeon, that Plaintiff saw the oral surgeon

20   three days later, and that the oral surgeon irrigated the surgical site.

21   Based on these competing versions regarding what occurred at this visit and Plaintiff's

22   condition at the time, the Court finds that there is a genuine dispute of material fact regarding

23   whether defendant Anunciacion knowingly disregarded Plaintiff's serious medical need.

24   According to the evidence provided by Plaintiff, not only did Plaintiff tell defendant

25   Anunciacion that there was food inside the surgical site, defendant Anunciacion acknowledged

26   it was there.  Despite this, and despite appearing to admit that she could clean the wound and

27   \\\

28   \\\

17

that the wound should have been cleaned,[7] defendant Anunciacion did not clean the wound or provide any other treatment.

The Court thus finds that Plaintiff has presented sufficient evidence to create a genuine dispute of material fact regarding whether defendant Anunciacion knowingly disregarded Plaintiff's serious medical need.[8]

Defendants do argue that defendant Anunciacion's "decision not to irrigate Mr. Jordan's depression at the July 13, 2018 appointment did not harm him or cause his condition to worsen."  (ECF No. 52, p. 12).[9]

The Court finds that this argument is unpersuasive for two reasons.  First, the argument appears to be based on Defendants' version of events, not Plaintiff's.  That is, Defendants appear to argue that Plaintiff was not harmed by defendant Anunciacion's "decision not to irrigate the healed surgical site," (ECF No. 52, p. 12), while Plaintiff has submitted evidence that the surgical site had not healed and that food was in the wound.

Second, the Court finds that, taking Plaintiff's evidence as true and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has sufficiently shown that he was harmed.  Based on Plaintiff's evidence, having food in the wound was extremely painful.  As discussed above, defendant Anunciacion acknowledged the issue, could have addressed the issue, and should have addressed the issue.  Declaration of Defendant Anunciacion, ECF No. 52-3, p. 3, ¶ 11 ("If food could have entered the wound, then I would have irrigated the area.").  Instead, she allowed Plaintiff to suffer "extreme pain" needlessly for three days.  Accordingly, the Court finds that Plaintiff's evidence is sufficient to create a genuine dispute of material fact regarding whether he was harmed by the indifference.  See, e.g., Clement v. Gomez, 298 F.3d 898, 904-05 (9th Cir. 2002) (denying summary judgment where the plaintiffs submitted evidence of the

---

[7] Defendant Anunciacion stated in her declaration that "[i]f food could have entered the wound, then I would have irrigated the area."  Declaration of Defendant Anunciacion, ECF No. 52-3, p. 3, ¶ 11.  The Court also notes that while Defendants submit evidence that it was medically unnecessary to irrigate the wound if food was not in the wound, they present no evidence, and do not argue, that it was medically unnecessary even if food was in the wound.

[8] Defendants do not argue in their motion for summary judgment that Plaintiff did not have a serious medical need to have his wound irrigated.  Accordingly, the Court does not address this issue.

[9] The Court will not address any new arguments that Defendants raise in their reply.

painful effects of pepper spray and where "the [plaintiffs] may be able to show that the defendants were subjectively aware of the risk of serious injury when they denied showers and medical attention for the inmates for [a] 4 hour period").

IV.     **CONCLUSION AND RECOMMENDATION**

Based on the evidence submitted by the parties, the Court finds that there is a genuine dispute of material fact regarding whether Defendants knowingly disregarded Plaintiff's serious medical needs.

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __June 28, 2022__                     /s/ Erica P. Grosjean

                                    UNITED STATES MAGISTRATE JUDGE